IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY GILL,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DAVID SIMPSON, JASON CHRISCO, CLAYTON LOGOMASINI, GLOBAL SERVICES, INC., a Missouri corporation, NAVISS, LLC, a Missouri limited liability company d/b/a Naviss Direct, and DOES 1 through 80, inclusive,<br><br>　　　　　Defendants. | 1:12-CV-1011  AWI GSA<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER<br><br>(Doc. No. 11) |

　　　This case arises out of a business relationship between Plaintiff Jay Gill ("Gill") and Defendants.[1] Gill has alleged California state law claims against Defendants for conspiracy, conversion, intentional and negligent interference with prospective economic relations, accounting, misappropriation of trade secrets, failure to use reasonable care, and breach of contract. The active complaint is the First Amended Complaint ("FAC"). On June 21, 2012, Defendants removed this matter from the Fresno County Superior Court on the basis of diversity jurisdiction. Defendants now move to dismiss this matter for lack of personal jurisdiction under Rule 12(b)(2) or alternatively to transfer venue to the Eastern District of Missouri under 28 U.S.C. § 1404(a). For the reasons that follow, Defendants' motion to transfer will be granted.

---

　　　[1] On August 21, 2012, Gill voluntarily dismissed Defendant Clayton Logomasini from this case. See Doc. Nos. 25, 29.

**FACTUAL BACKGROUND**

From the FAC, in March 2009, Defendant David Simpson ("Simpson") approached Gill in Fresno County to borrow money from Gill for Simpson's company, Defendant Global Services, Inc. ("Global"). Global was formed and incorporated to be a warranty company that marketed used car warranties. Gill agreed to loan Global $100,000 in exchange for 51% of Global's stock. On March 10, 2009, Gill loaned Global the $100,000 and Gill received 51% (1,020 shares) of Global's stock. Simpson, as well as Shaundra Stapleton, Tommy Stapleton, and Defendant Jason Chrisco, owned the remaining shares of Global stock (245 shares each). Further, in connection with the $100,000 loan, Simpson, Gill, Chrisco, and the Stapletons executed a Non-Compete Agreement ("NC Agreement"). In pertinent part, the NC Agreement provided: "Jurisdiction for filing any complaint based on this Non-Compete Agreement shall be in the Superior Court of the County of Fresno of the State of California and shall be subject to California Law." See FAC Ex. A at ¶ 2.

On April 1, 2009, Gill was elected to be President and Chairman of the Board of Global, Simpson was elected Chief Executive Officer, and Chrisco was elected Chief Distribution Officer.

On October 15, 2009, Simpson spoke with Gill about obtaining more capital and having the shareholders reduce their stock interest on a pro-rata basis. Gill understood that Global would issue an additional 8,000 shares of stock. Gill understood that he and the other investors would be issued a small amount of the new shares in the same proportion as they then held, but that their overall interest in the corporation would be reduced on a pro-rata basis. Based on this understanding, Gill, as the 51% shareholder, agreed to the stock issuance.

Contrary to Simpson's representations that all shareholders' interests in Global would be reduced on a pro-rata basis, Gill subsequently learned that his interest had dropped from 51% to 16.25%, while the other stockholders' interests changed from 12.25% to 10%.

On October 16, 2009, Gill received an e-mail from Simpson indicating that Global's name had been changed to North American Vehicle Insurance Service Specialists. However, unknown to Gill at the time, a new limited liability company with the name North American

Vehicle Insurance Service Specialists was formed and the articles of organization were filed on December 10, 2009. Also unknown to Gill at the time, on February 26, 2010, an amendment to the articles of organization changed the name of North American Vehicle Insurance Service Specialists to NAVISS, LLC.

On December 4, 2009, Global executed a promissory note in the amount of $100,000 to Gill. By March 2001, Gill had been repaid the entire amount due on the promissory note, plus interest. Gill still retained his ownership interest in Global.

As part of an alleged conspiracy to deprive Gill of his interest in the business and profits of Global, Simpson fraudulently advised Plaintiff that a separate company needed to be created to contract with the insurance companies, from which Global obtained its warranties. On March 11, 2011, Simpson advised Gill that Gill would be given the same ownership interest in the new company as his ownership interest in Global. However, not only did Defendants fail to give Gill the same percentage interest in NAVISS as he had in Global, Defendants failed to give Gill any interest in NAVISS.

Thereafter, Simpson, Chrisco, and Defendant Clayton Logomasini caused the assets of Global to be transferred to NAVISS fraudulently and without consideration, which resulted in injury and damage to Gill.

## DEFENDANTS' MOTION

*Defendants' Argument*

Defendants argue *inter alia* that venue is proper in the Eastern District of Missouri because each of the Defendants is a citizen of Missouri and resides in the St. Louis area, and any transfer of assets would have occurred in Missouri. Defendants argue that the various factors that the Court is required to examine weigh decidedly in favor of transferring this matter. The Eastern District of Missouri is a more convenient venue for four of the five parties. There are five non-party witnesses who will testify about the operations and accounting practices of Global and NAVISS, and those witness are outside the subpoena power of the Eastern District of California, but within the subpoena power of the Eastern District of Missouri. No contracts were

formed in California. The events giving rise to this lawsuit did not occur in California, thus Gill's decision to file the lawsuit in California is given less deference. Missouri has a more substantial connection to the parties in this case, and the contacts with California involve only limited trips by Simpson and Chrisco. Litigating in Missouri will lower costs because most witnesses and parties, and most if not all evidence/documents are located in Missouri, which means that transportation costs will be reduced. Missouri will be able to subpoena all material non-party witnesses and documents, including documents relating to Global that are in the possession of non-party witness Shaundra Stapleton. The Eastern District of Missouri will be able to enforce a judgment easier because Defendants are challenging the personal jurisdiction of the Eastern District of California. The Eastern District of Missouri's docket is less congested, which will lead to a quicker resolution of this matter. Litigating this matter in Missouri would avoid difficult legal questions such as personal jurisdiction and, should one or more of the defendants be dismissed for lack of personal jurisdiction, questions regarding whether that defendant is a necessary party would be avoided. Finally, Missouri has a more compelling interest in this case because there are no allegations that indicate any improper conduct occurred in California, and each of the Defendants is a Missouri citizen. Thus, this case should be transferred to the Eastern District of Missouri.

*Plaintiff's Opposition*

Gill argues that the Court should not transfer this case. This forum was chosen because Gill resides and does business in California. The convenience of the parties does not favor transfer because Gill, as well as Parmjeet Matharu, Thomas Schindler, and Lisa Schindler (who are all witnesses and investors in Global/NAVISS) are California residents. Thus, whether the case is transferred to Missouri or retained in California, four parties will be inconvenienced.[2] Merely shifting the inconvenience is not appropriate. There are also more non-party witnesses who reside in California than non-party witnesses who reside in Missouri. Further, the substantive law to be applied is that of California, and the Eastern District of California is more

---

[2] Why Plaintiff contends that four parties will be inconvenienced regardless of transfer is unknown. There is only one plaintiff in this case, and five parties total.

4

familiar with California law than the Eastern District of Missouri.  Finally, that the Eastern District of California has a more congested docket and that it may take six more months to try the case in California is a factor that is given little weight.  Thus, this case should not be transferred.

*Legal Standard*

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  This statute partially displaces the common law doctrine of *forum non conveniens*.  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).  The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, cases by case consideration of convenience and fairness.'"  Stewart Organization, Inc. v. RICOH Corp., 487 U.S. 22, 29 (1988).

In order to transfer a case under § 1404(a), the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  See Decker, 805 F.2d at 843.  The district court must weigh numerous factors when deciding whether to transfer a case under § 1404(a), including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.  Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis . . . [and] the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  The Court should also consider the convenience of parties and witnesses, feasability of consolidation of other claims, local interest in the controversy, and the court congestion of the two forums.  See Metz v. United States Life Ins. Co., 674 F.Supp.2d 1141, 1145-46 (C.D. Cal. 2009); Williams v. Bowman, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001)

*Discussion*

There is no dispute that this case "might have been brought" in the Eastern District of Missouri. Each of the Defendants is a citizen of Missouri, and substantial acts relating to Gill's causes of action occurred in the Eastern District of Missouri. Thus, the Court will proceed to examine each of the relevant transfer factors separately.

(1) The location where the relevant agreements were negotiated and executed

Simpson (on behalf of himself, Global, and NAVISS) and Chrisco each declared that they have not "formed" any contracts in California. See Doc. No. 12 at ¶ 6, Doc. No. 13 at ¶ 9, Doc. No. 14 at ¶ 10, Doc. No. 16 at ¶ 6. This suggests that neither the NC Agreement nor the agreement for Gill to obtain an ownership interest in NAVISS was finalized and/or executed in California. However, neither Simpson nor Chrisco identify where negotiations actually occurred.

The FAC alleges that Simpson approached Gill in Fresno County for a $100,000 loan for Global, and, after negotiation, an agreement was reached. See FAC ¶ 9. This allegation indicates that some of the negotiations concerning the NC Agreement occurred in the Eastern District of California. However, Gill has not presented additional evidence on this factor, and has not expressly stated where negotiations occurred or where the NC Agreement was executed.

Considering the information before the Court, including the allegations in the FAC, the Court can only conclude that some of the various negotiations and executions occurred in California, while others occurred in Missouri.[3] Therefore, this is a neutral factor.

(2) The state that is most familiar with the governing law

Gill's suit alleges only California state law claims, and the NC Agreement provides that California law governs any claims that are based on it. Gill contends that California law applies in this case, and Defendants have not challenged this position or argued that Missouri law applies. Accordingly, the Court concludes that California law applies to this case. Because this Court sits in California and regularly applies California state law, the Eastern District of California is more familiar with the governing law. This factor weighs against transfer.

---

[3] Gill has submitted a number of e-mail correspondences between himself and Simpson, which suggests that Gill and Simpson generally communicated while Gill was in California and Simpson was in Missouri.

(3) The plaintiff's choice of forum

Gill chose the Eastern District of California to file suit. Gill lives in this district, likely received communications from Defendants in this district, and, as part of the $100,000 loan to Global, insisted on a clause in the NC Agreement that set jurisdiction in the Fresno County Superior Court. See FAC Ex. A. It is not clear, however, where exactly Gill was told that he would have an ownership interest in NAVISS. Further, it appears that any transfer of assets or the creation of a conspiracy would have occurred in Missouri. "[W]here the forum lacks any significant contact with the activities alleged in the complaint, plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum." Knapp v. Wachovia Corp., 2008 U.S. Dist. LEXIS 41000, *5 (N.D. Cal. May 12, 2008); Amazon.com v. Cendant Corp., 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005). It appears that the Eastern District of California does have connections to the activities alleged in the FAC, but it also appears that more of the relevant activities occurred in Missouri. The Court finds that this factor weighs against transfer, but in a slightly diminished capacity. Cf. id.

(4) The respective parties' contacts with the forum

Gill lives in the Eastern District of California, but his primary business is in Livermore, California, which is in the Northern District of California. See FAC ¶ 1; Gill Dec. ¶ 1.

Chrisco personally traveled to Irvine, California on one occasion in late 2009. See Gill Dec. ¶ 7. Chrisco also signed the NC Agreement. See FAC Ex. 1. However, Irvine is in the Central District of California, and it is unknown where Chrisco executed the NC Agreement.

Like Chrisco, Simpson signed the NC Agreement, which has a connection to the Eastern District of California. See FAC Ex. 1. Simpson also traveled to California approximately four times between March 2009 and August 2010 in order to solicit investors for Global or NAVISS. See Gill Dec. ¶¶ 3, 6, 7, 11; Schindler Dec. ¶¶ 3-4. The March 2009 trip, which led to Gill's investment of $100,000.00, occurred in the Eastern District of California (Fresno, County). See FAC ¶ 8; FAC Ex. 1. However, the remaining trips appear to have occurred in either Livermore, Dublin, or Irvine, California. None of those cities are within the Eastern District of California. Simpson also sent numerous e-mails into California regarding either investment in Global or

NAVISS, or regarding the status of Global and NAVISS.  See Gill Dec. ¶ 13; Matharu Dec. ¶ 5; Bribiescas Dec. ¶¶ 5-6; Schindler Dec. ¶ 6; see also Stapleton Dec. ¶¶ 12-13 (opining that 12-25 phone presentations were made into California in order to obtain investment and 70-100 conference calls were made to individuals in California).  However, it is unknown where the e-mails to Gill were actually received,[4] and the rest of the e-mails appear to have been received in either Livermore (sent to Parmjeet Matharu),[5] Dublin (sent to Thomas Schindler), or Santa Rosa (sent to Dan Bribiescas).  None of those cities are in the Eastern District of California.

The Defendants are all citizens of Missouri.  Simpson's declaration indicates that Global and NAVISS do not:  maintain office space in California, employ personnel in California, own or lease property in California, conduct business in California, file tax returns in California, have not formed contracts in California, and have not committed torts in California.  See Doc. No. 13 at ¶¶ 3-18; Doc. No. 14 at ¶¶ 3-17.  Similarly, Simpson and Chrisco have declared that they do not live, conduct business, pay taxes, have bank accounts, or own property in California, but instead live and work in Missouri.  See Doc. No. 12 at ¶¶ 4-12; Doc. No. 16 at ¶¶ 3-14.

In light of the evidence submitted to the Court, one party has a significant contact with the Eastern District of California, while four parties appear to have insignificant contacts.  The Defendants' only contacts with this forum that the Court can see with any clarity is that Gill was first solicited in Fresno, County and the NC Agreement gives the Fresno County Superior Court jurisdiction over certain disputes.  Beyond this, the remaining contacts with California appear to have generally occurred in the Northern District of California.[6]  Without further information about where various representations were made and received, the Court cannot find more substantial contacts with the Eastern District of California.  The Court will give weight to the fact

---

[4] Gill resides in Kerman, California, but his primary place of business is Livermore, and Gill had dealings with Defendants in his Livermore office.

[5] Matharu states that he is the general manager for Gill's car dealership in Livermore.  Matharu does not state where he resides or where the e-mails were actually sent/received.  However, given that Matharu met Simpson in Livermore and works in Livermore, see Matharu Dec. ¶¶ 1-3, it is more likely than not that the Matharu was receiving e-mails at or near Livermore.

[6] The Court says "generally" because Irvine is in the Central District of California, and it is unknown how many or what kind of additional contacts Defendants had with Gill in this District, as opposed to the Northern District of California, i.e. in Livermore.

that Gill resides in this district.  Nevertheless, since four of the five parties have non-extensive contacts with the Eastern District of California, this factor weighs in favor of transfer.

<u>(5) The contacts relating to the plaintiff's causes of action in the chosen forum</u>

Gill has alleged California state law claims for:  conspiracy, conversion, intentional and negligent interference with prospective economic relations, accounting, misappropriation of trade secrets, failure to use reasonable care, and breach of contract.

With respect to the breach of contract claim, there is a connection to the Eastern District of California.  This cause of action is based on the NC Agreement, which appears to have been negotiated at least in part in the Eastern District of California.  <u>See</u> FAC ¶ 9; FAC Ex. 1.  However, the breach of the NC Agreement occurred when NAVISS was created/established in Missouri.  Accordingly, although this cause of action has some connection to this forum, the connection is not as strong as it could be.

With respect to the negligent and intentional interference with prospective economic relations claims, those two causes of action are based on Logomasini allegedly convincing Simpson and Chrisco to create NAVISS and to compete with Global.  The conduct between Logomasini and Simpson and Chrisco likely occurred in St. Louis, Missouri, and NAVISS was created in Missouri.  There is no established relationship between the Eastern District of California and the conduct that forms the bases of these two causes of action.

With respect to the remaining causes of action, those claims are all based on the establishment of NAVISS, the transfer of Global assets to NAVISS, and the exclusion of Gill from any ownership interest in NAVISS.  The alleged conspiracy would have been created in or near St. Louis, and it appears that many of the acts done in furtherance of the conspiracy, including the ultimate damaging acts, occurred in or near St. Louis.  Further, the transfer of assets from Global to NAVISS, and the issuance of additional stock in Global, all would have occurred in Missouri.  There is no established relationship between the Eastern District of California and the conduct that forms the bases of these causes of action.

In light of the above, the Court finds that Gill's causes of action as a whole have little connection to the Eastern District of California.  This factor weighs in favor of transfer.

(6) Costs of litigation in the two forums

It is unknown what the differences in costs of litigation would be between the Eastern District of California and the Eastern District of Missouri.  This is a neutral factor.

(7)  Relative court congestion

The Eastern District of California has a more congested docket.  As of March 31, 2011, the Eastern District of California had 6,840 civil cases pending, while the Eastern District of Missouri had 2,852 civil cases pending.  See Federal Caseload Statistics 2011, Table C at pp. 44-45.[7]  This factor weighs in favor of transfer.

(8) Convenience of Witnesses

To show inconvenience to witnesses, the moving party should state the witnesses's identities, locations, content, and relevance of their testimony.  See In re Ferrero Litig., 768 F.Supp.2d 1074, 1080 (S.D. Cal. 2011); Florens Container v. Cho Yang Shipping, 245 F.Supp.2d 1086, 1092-93 (N.D. Cal. 2002).  It is "the convenience of non-party witnesses, rather than that of employee witnesses . . . that is the more important factor and is accorded greater weight." Gundle v. Fireman's Fund Insurance Co., 844 F.Supp. 1163, 1166 (S.D. Tex. 1994).

The Defendants have identified 5 non-party witnesses who reside in or near St. Louis, Missouri:  Clayton Logomasini, Shaundra Stapleton, Tommy Stapleton, Tom Klepsig, and Steve Mastin.  Logomasini is an officer of NAVISS and until recently was a defendant in this case. Logomasini is  alleged to be a key part of the conspiracy to defraud Gill.  His testimony is obviously relevant to each of the causes of action.  Shaundra Stapleton is alleged to be a founding member and former employee of Global, and a former employee of NAVISS, who will be able to testify about the daily operations and accounting practices of Global and NAVISS.  It appears to the Court that Stapleton will have relevant testimony as it relates to the issuance of additional stock by Global and how and/or why Gill's share of the additional stock in Global was determined.  However, the Court cannot determine the level of interaction that Shaundra Stapleton may have had with NAVISS, including Global's transfer of assets to NAVISS.  The

---

[7]This table may be found at the United States Courts website:
http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2011/tables/C01Mar11.pdf

10

description of Tommy Stapleton's knowledge and involvement is identical to that of Shaundra Stapleton; thus, the same considerations generally apply. However, Tommy Stapleton has submitted a declaration on behalf of Gill. This level of cooperation with Gill suggests that the inconvenience to Tommy Stapleton may be less substantial than it would otherwise appear to be. Also, Stapleton declares that he ceased working for Global and/or NAVISS when Simpson locked him out. See Doc. No. 23-4. Thus, it does not appear that Stapleton would have any knowledge about the transfer of assets by Global to NAVISS in March 2011. Klepsig is described as an individual who can provide testimony about the organization and operation of Global and the relationship between the parties and some of the investors and creditors. This description of Klepsig indicates that his testimony will be relevant to issues surrounding Global, but he will have limited information regarding NAVISS. Finally, Mastin is described as the chief financial officer of NAVISS who has information regarding the accounting practices of NAVISS and its financial status at various points. This description indicates that Mastin will have relevant testimony regarding the transfer of assets from Global to NAVISS.

     Gill has identified 6 non-party witnesses who reside in California: Steve Burke, Parmjeet Matharu, Kevin Razaghi, Dan Bribiescas, Thomas Schindler, and Lisa Schindler. There is no express description of what relevant information these witnesses possess. However, these individuals have submitted declarations in opposition to this motion. Thomas Schindler declares that he and his wife Lisa Schindler met with Simpson face to face and telephonically, and eventually invested $50,000 in Global in November 2009. See Doc. No. 23-8. Steve Burke declares that he met Simpson in person in late 2009 or early 2010 to discuss expanding Global and/or NAVISS's operations to overseas. See Doc. No. 23-7. Kevin Razaghi declares that he was present for two face to face meetings with Simpson, one to solicit an investment in Global and one for Razaghi's company to perform software work for Global. See Doc. No. 23-3. Razaghi declares that his company was never paid for the $50,000 worth of software work performed for Global. See id. Matharu declares that he met numerous times with Simpson in Gill's offices in Livermore, California, and eventually invested $100,000 in Global. See Doc. No. 23-6. Dan Bribiescas declares that from 2009 to 2012, he received various solicitations from

Simpson on behalf of Global and NAVISS.  See Doc. No. 23-1.  Finally, Jeff Polley, a resident of Colorado, declares that he participated in a discussion with Simpson in July/August 2010 for Ford Motor Credit Company.  See Doc. No. 23-2.

Based on the submissions, the 6 non-party witnesses identified by Gill have limited value.  The information that Gill's witnesses possess seem to deal with Simpson's efforts to obtain investors, and with general representations made by Simpson about Global and/or NAVISS to those investors.  There is no indication that these witnesses are aware of the acts or representations that form the bases of Gill's causes of action for conspiracy, breach of contract, due care, interference, conversion, and misappropriation.  Information about Simpson's representations to Gill or about Gill relative to the issuance of additional stock by Global or an ownership interest by Gill in NAVISS would have significantly more probative value.  Instead, these witnesses' information at best appear relevant as a type of general background.

On the other hand, the witnesses identified by Defendants appear to have more probative information that relate directly to the causes of action alleged by Gill.  The witnesses identified by Defendants have more information on the relevant accounting and bookkeeping practices and about the issuance of additional Global stock, the transfer of assets from Global to NAVISS, and the representations made to Gill.  However, the inconvenience to Logomasini and Mastin is given reduced weight because they are employees of NAVISS.  See Gundle, 844 F.Supp. at 1166.

The Court concludes that the relevance of Defendants' witnesses significantly outweighs the relevance of Plaintiff's witnesses.  Defendants' witnesses all live in or near St. Louis, Missouri, so any forum in Missouri would be more convenient than Fresno, California.  Even though two of the Defendants' witnesses are employees of NAVISS, as a whole, this factor weighs in favor of transfer.

### (9) The Availability Of Compulsory Process To Compel Attendance of Unwilling Non-Party Witnesses

The 6 non-party witnesses identified above by Plaintiff are all subject to this Court's ability to issue compulsory process.  There is no indication that the Eastern District of Missouri would be able to compel the attendance of any of these witnesses.  However, as discussed above, the relevance of these witnesses' evidence is very limited

The 5 non-party witnesses identified by Defendants are all subject to the Eastern District of Missouri's ability to issue compulsory process.  Mastin and Logomasini are employees of NAVISS.  It is generally accepted that a defendant may compel its employees to testify, and as such, difficulties in obtaining the employees' testimony may be discounted.  See Barnstormers, Inv. v. Wing Walkers, LLC, 2010 U.S. Dist. LEXIS 144232, *5 (S.D. Cal. July 9, 2010); but see Parrish v. NFL Players, Inc., 2007 U.S. Dist. LEXIS 43732, *19 (N.D. Cal. June 4, 2007) (recognizing that a defendant employer is not necessarily obligated to produce an employee who is outside the court's subpoena power).  In the absence of an argument by NAVISS to the contrary, the Court will assume that NAVISS will compel Mastin and Logomasini's attendance.  As for the remaining three witness, Klepsig and the Stapletons, there is an insufficient indication that these witnesses would be willing to travel to Fresno, California from Missouri.  The Court sees no way in which it could compel these witnesses to appear and testify in the Eastern District of California.

As discussed above, the information/testimony from the Defendants' 5 witnesses is significantly more relevant than the limited information from the 6 witnesses identified by Gill.  Even though it appears that the two of the 5 witnesses would attend court in the Eastern District of California, the information possessed by the 3 witnesses who cannot be compelled is more relevant than the information possessed by the 6 witnesses identified by Gill.  Accordingly, the Court concludes that this factor weighs slightly in favor or transfer.

### (10) The ease of access to sources of proof

Defendants' declarations indicate that various documents, including corporate accounting books, minutes, and records, are all located in Missouri.  See Doc. No. 13 at ¶ 8; Doc. No. 14 at ¶ 9.  Further, Simpson's declaration indicates that accounting records are in the possession of non-party witness Shaundra Stapleton, who is outside the subpoena power of this Court and not an employee of Global or NAVISS.  See Doc. No. 12 at ¶ 13; Doc. No. 13 at ¶ 20; Doc. No. 14 at ¶ 18.  However, Defendants have not expressly stated whether these documents are voluminous.

Gill has not addressed this factor expressly, but has submitted several pages of e-mail communications, and the FAC attaches the single-page NC Agreement as an exhibit.  These

documents are not voluminous.

It is not entirely clear how many documents are located in Missouri. However, based on the allegations in the FAC, it appears more likely than not that there is a significant volume of documents at issue, and the vast majority of those documents are located in Missouri. The Court finds that this factor weighs slightly in favor of transfer.

### (11) Convenience of the Parties

Again, Gill lives in the Eastern District of California and works in the Northern District of California. No parties have identified any contacts that Gill may have with Missouri. Accordingly, the Court concludes that California is the more convenient forum for Gill.

As stated above, each Defendant is a citizen of Missouri and they do not own property or conduct business in California. It is clear that Missouri is a more convenient forum for Defendants. However, the evidence submitted and the allegations in the FAC indicate that Simpson has traveled to California on multiple occasions for the purpose of soliciting investors for Global and/or NAVISS. Thus, Simpson, Global, and NAVISS are accustomed to traveling and soliciting in California and their inconvenience is not as great as would first appear.

The inconvenience to Gill and Chrisco appears to be equal in terms of the competing forums. Further, the convenience to Simpson, Global, and NAVISS, does not appear significant given the trips and solicitations into California in general. The Court concludes that this is a neutral consideration.

### (12) Forum Selection Clause

When evaluating a § 1404 motion, the "presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." Stewart Org., 487 U.S. at 29. As noted above, the NC Agreement contained the following provision: "Jurisdiction for filing any complaint based on this Non-Compete Agreement shall be in the Superior Court of the County of Fresno of the State of California and shall be subject to California Law." See FAC at Ex. A ¶ 2. There is at least one cause of action that is based on the NC Agreement – Gill's breach of contract claim. Per the NC Agreement, venue is proper for at least that cause of action. However, the parties have not addressed whether any additional causes of action are "based on"

the NC Agreement. In fact, a plain reading of the forum selection clause and the FAC indicates that not all of Gill's causes of action are "based on" the NC Agreement. See, e.g., FAC ¶¶ 34-36 (cause of action for conversion).

The Court concludes that, since there is at least one cause of action that fits squarely within the forum selection clause, this factor weighs against a transfer. However, because it does not appear that each of the causes of action are "based on" the NC Agreement, this factor weighs against transfer in a somewhat diminished capacity.

### (13) Public Policy Considerations/Local Interest In The Controversy

California has an interest in ensuring that one of its citizens has a litigation forum, and also has an interest in ensuring that its citizens are not the victims of fraud. However, Missouri also has an interest in overseeing and protecting its citizens and corporate entities. There is one citizen of California and fourt citizens of Missouri involved. Further, the transfer of assets and stocks was related to Missouri entities and took place in Missouri. Given the activity involved and the number of Missouri citizens involved, the Court concludes that Missouri has a stronger interest in this controversy. Accordingly, this factor weighs in favor of a transfer.

*Resolution*

As indicated above, factors 1, 6, and 11 are neutral and counsel neither for nor against a transfer. Factors 2, 3, and 12 weigh against a transfer. Factors 4, 5, 7, 8, 9, 10, and 13 weigh in favor of transfer. Some of the considerations weigh either for or against transfer in a somewhat diminished capacity. Nevertheless, the end result is that 3 factors weigh in favor of keeping this case while 7 factors weigh in favor of transfer. Considering each of the factors as discussed above, including the diminished capacities of some of these factors, the Court concludes that the seven factors in favor of transfer substantially outweigh the three factors against transfer. Therefore, the Court will grant Defendants' alternative motion and transfer this case to the Eastern District of Missouri.[8]

---

[8] Defendants also move to dismiss for lack of personal jurisdiction. However, the Court's ability to transfer under 28 U.S.C. § 1404(a) does not depend upon its ability to exercise personal jurisdiction over Defendants. Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 12088, 1211-12 (D. Haw. 2002). As such, the Court need not resolve Defendants' Rule 12(b)(2) motion. Halvorson v. Solaroad Techs. Group, LLC, 2011 U.S. Dist. LEXIS 56121, *4-*5 (W.D. Wash. May 12, 2011).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to transfer venue under 28 U.S.C. § 1404(a) is GRANTED;
2. This case is TRANSFERRED forthwith to the Federal District Court for the Eastern District of Missouri; and
3. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   October 11, 2012

CHIEF UNITED STATES DISTRICT JUDGE